UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-00176-BR

| | | |
|---|---|---|
| MARGARET H. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| | ) | |
| CHASE BANK USA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the partial motion to dismiss filed by defendant Chase Bank USA, N.A. ("Chase"). (DE # 14.) The motion has been fully briefed and is therefore ripe for disposition.

## I. FACTS

In 2010, plaintiff opened a credit card account with Chase. (Am. Compl., DE # 8, ¶ 10.) After the account was open, plaintiff used the credit card for personal purposes, and received monthly credit card statements from Chase. (Id. ¶¶ 11-12.) At some point, plaintiff noticed several unauthorized charges on her credit card statements. (Id. ¶ 13.) The unauthorized charges appeared on her statements as "PP *FACEBOOKPAY," and plaintiff believed the transactions originated from an internet bot that wrongfully charged her credit card. (Id. ¶ 14.) Plaintiff claims that she "promptly notified" Chase to alert it of the fraudulent transactions, but Chase failed to take timely and reasonable measures to address the issue. (Id. ¶¶ 15-18.) According to plaintiff, the unauthorized transactions resulted in her being improperly assessed the principal amount of $272,640.55. (Id. ¶¶ 30-31.)

Plaintiff acknowledges that Chase ultimately did undertake an investigation of her allegations of billing errors. (Id. ¶¶ 32-34.) The investigation concluded that the challenged charges were fraudulent, and Chase issued a long line of credits to plaintiff's credit card account totaling $209,587.69. (Id. ¶¶ 32-33.) In May 2015, Chase issued plaintiff a credit card statement showing a credit to her account for a fraud claim and a total credit balance of $59,403.39. (Id. ¶ 35; see also Ex. A, DE # 8-1.) The statement stated, in pertinent part, "You have a credit balance, so no payment is required. You may make charges against the credit or request a refund by contacting Cardmember Service at the address above." (Ex. A., DE # 8-1, at 3.) After receiving the statement, plaintiff contacted Chase to request a refund of these funds. (Am. Compl., DE # 8, ¶ 36.) Chase refused to tender the funds shown on the statement. (Id.)

The following month, in June 2015, Chase issued a credit card statement which plaintiff claims showed two allegedly improper charges to her account for "fraud claim credits" totaling $84,568.35. (Id. ¶ 38.) Plaintiff notified Chase of the billing error in the June 2015 statement, and continued to request a refund of the credit balance shown on the May 2015 statement. (Id. ¶ 39.) Plaintiff alleges that Chase ignored her notice of the billing error and used the credit balance in her account to offset the new charges on her June 2015 statement. (Id. ¶¶ 41-42.) According to plaintiff, Chase currently owes her the amount of $63,052.986 plus late fees and interest. (Id. ¶ 43.)

On 9 March 2016, plaintiff initiated this action in the Superior Court of North Carolina, Wake County, seeking recovery for the improperly assessed charges. (DE # 1-1.) Chase subsequently removed the action to this court. (DE # 1.) Plaintiff later amended her complaint on 6 June 2016. (DE # 8.) The amended complaint asserts claims under the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1693 et seq., and the Electronic Funds Transfer Act ("EFTA"), 15

U.S.C. § 1601 *et seq.*, as well as state law claims for breach of contract, unfair and deceptive trade practices under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1 *et seq.*, and declaratory judgment. (Id.) On 5 July 2016, Chase filed a motion for partial dismissal of the amended complaint. (DE # 14.) Plaintiff subsequently filed a memorandum in opposition, (DE # 17), to which Chase replied, (DE # 21).

## II. ANALYSIS

Chase seeks partial dismissal of plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Chase concedes that plaintiff has alleged the existence of a valid contract, as well as a cognizable claim for breach of that contract. (Def.'s Mem. in Support, DE # 15, at 4.) However, Chase contends that "the remaining causes of action in the Amended Complaint should be dismissed because they fail to state claims upon which relief can be granted." (Id. at 1-2.)

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" Id. at 555-56 (internal citations omitted). In determining a motion to dismiss, "a court may consider documents attached to the

3

complaint or the motion to dismiss so long as they are integral to the complaint and authentic." Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462, 467 (4th Cir. 2012) (internal quotation marks and citation omitted).

A. **Fair Credit Billing Act Claim**

In her amended complaint, plaintiff alleges that Chase committed three violations of the FCBA: (1) a violation of the billing dispute resolution procedures in 15 U.S.C. § 1666; (2) a violation of the treatment of credit balances provision in 15 U.S.C. § 1666d; and (3) a violation of the prohibition on offsets in 15 U.S.C. § 1666h. (Am. Compl., DE # 8, ¶¶ 68-72.) Chase argues that this claim should be dismissed because plaintiff's amended complaint merely states legal conclusions instead of alleging facts plausibly demonstrating that Chase violated any of the obligations the FCBA imposes on creditors who extend consumer credit. (Def.'s Mem. in Support, DE # 15, at 8.)

Plaintiff first alleges that Chase violated the billing dispute procedures contained in the FCBA because it failed to conduct a reasonable investigation of the alleged billing errors and correct the billing errors as required by 15 U.S.C. § 1666. (Am. Compl., DE # 8, ¶¶ 68-69.) The FCBA, which is enforced by the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, and implemented through Regulation Z, 12 C.F.R. § 1026, "provides an avenue by which a debtor may challenge perceived billing errors on any credit card account statement and procedures that a creditor must follow in responding to properly raised billing errors." Esquibel v. Chase Manhattan Bank USA, N.A., 487 F. Supp. 2d 818, 825 (S.D. Tex. 2007) (citing 15 U.S.C. § 1666). "To succeed on a claim under § 1666, plaintiff must show (1) the existence of a billing error, (2) timely notification of the billing error, and (3) failure of the bank issuing the card to comply with the procedural requirements of Section 1666." Cunningham v. Bank One, 487 F.

4

Supp. 2d 1189, 1191-92 (W.D. Wash. 2007) (citation omitted). With respect to the requisite timely notice of a billing error:

> Section 1666(a) provides that if, within sixty days after having sent an obligor a statement of his or her account, the creditor receives a written notice from the obligor indicating his or her belief that the statement contains a billing error, the amount of the error, and the reason for believing there is an error, the creditor must make corrections in the account or investigate and explain why the account is correct prior to taking any action to collect the amount.

Middleton v. Rogers Ltd., Inc., 804 F. Supp. 2d 632, 637 (S.D. Ohio 2011) (citing 15 U.S.C. § 1666(a)). It follows that a creditor's statutory duties under §1666 are triggered when a credit card holder sends a creditor written notice "no later than 60 days after the creditor transmitted the first periodic statement that reflects the alleged billing error." 12 C.F.R. § 1026.13(b)(1).

Chase seeks dismissal of this claim, arguing that plaintiff has not alleged that she provided proper written notice of any of the alleged billing errors within the timeframe required by 15 U.S.C. § 1666(a). In the amended complaint, plaintiff alleges that the "[unauthorized] transactions continued for months and months on end." (Am. Compl., DE # 8, ¶ 30.) However, plaintiff identifies only one specific statement that reflects an alleged billing error—the June 2015 statement. Moreover, even though plaintiff asserts that she had been in regular telephone contact with Chase's fraud department, there are no allegations in the amended complaint that suggest that plaintiff sent written notice of any of the billing errors to Chase.[1] Rather, the complaint states in a conclusory manner that plaintiff "timely provided notice of billing errors

---

[1] In responding to Chase's motion to dismiss, plaintiff includes additional allegations that "[i]n June 2015, [she] provided written notice to Chase which identified the billing errors contained on that month's statement" and "that the notice specifically drew attention to the June 2015 'Fraud Claim Credits' identified in the Amended Complaint." (DE # 17, at 4.) However, a plaintiff may not amend her complaint through argument in briefing. See Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 542 (E.D.N.C. 2008) (finding plaintiff "cannot use her brief to amend her complaint") (citing Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")); accord Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." (unpublished) (internal citations and quotations omitted)). Therefore, the court will not consider the additional allegations.

pursuant to 15 U.S.C. § 1666." (Id. ¶ 70). Without factual detail as to the time, substance, and form of the notice, the court cannot infer that plaintiff provided Chase with requisite written notice of a billing error. See Middleton, 804 F. Supp. 2d at 638 (finding consumer's failure to plead that she provided the creditor with notice of disputed charges within 60 days of a statement barred claim under the FCBA); Camacho v. J.P. Morgan Chase, No. 14-30042-MGM, 2015 WL 3872332, at *5 (D. Mass. June 23, 2015) (holding "the court need not delve into the alleged violations of the procedural requirements of Section 1666 because Plaintiff has not included sufficient factual detail to support an inference that he timely notified Defendant of each billing error, an element of all Section 1666 claims"). Accordingly, plaintiff has failed to state a claim under the billing error provisions of the FCBA, and this claim must be dismissed. Plaintiff may reassert this claim if she is able to further amend her complaint to allege the necessary facts.

Plaintiff also alleges a violation of the FCBA based on Chase's refusal to grant her request for a refund of the credit balance shown on her May 2015 statement. (Am. Compl., DE # 8, ¶ 70.) The FCBA provision at issue, 15 U.S.C. § 1666d, requires a creditor to treat credit balances in excess of $1 as follows:

> Whenever a credit balance in excess of $1 is created in connection with a consumer credit transaction through (1) transmittal of funds to a creditor in excess of the total balance due on an account, (2) rebates of unearned finance charges or insurance premiums, or (3) amounts otherwise owed to or held for the benefit of the obligor, the creditor shall—
>
> (A) credit the amount of the credit balance to the consumer's account;
>
> (B) refund any part of the amount of the remaining credit balance, upon request of the consumer; and
>
> (C) make a good faith effort to refund to the consumer . . . the amount of the credit balance remaining in the account for more than six months . . . .

15 U.S.C. § 1666d. "A credit balance arises whenever the creditor receives or holds funds in an account in excess of the total balance due from the consumer on that account." 12 C.F.R. § 1026.21, sup. 1 at ¶ 21(a).

Here, Chase does not dispute that the May 2015 credit card statement reflects that plaintiff's account had a credit balance in the amount of $59,403.39. (See Def.'s Mem. in Support, DE # 15, at 8.) Instead, Chase appears to argue that the credit balance shown on the May 2015 statement was inaccurate because it reflected credits that were mistakenly applied to plaintiff's account following its internal investigation. Chase therefore contends that it did not violate § 1666d because "none of the generalized factual allegations in the [a]mended [c]omplaint demonstrate that [plaintiff] was actually entitled to the credit and refund of the credit balance shown on the May 2015 statement." (Id. at 8.) Chase does not refer to any attached materials from which the court could determine whether or not the credits at issue were warranted. Therefore, accepting plaintiff's allegations that she was "owed" the credits and requested a refund of the credit balance as true, plaintiff has plead sufficient facts to support a claim under § 1666d.

Plaintiff's third FCBA claim alleges that Chase "wrongfully and without authorization applied funds held on deposit by Chase for plaintiff to the unauthorized charges." (Am. Compl., DE # 8, ¶ 71.) Plaintiff premises this claim on 15 U.S.C. § 1666h, which prohibits offsets by the card issuer as follows:

> A card issuer may not take any action to offset a cardholder's indebtedness arising in connection with a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer unless—
>
> **(1)** such action was previously authorized in writing by the cardholder in accordance with a credit plan whereby the cardholder agrees periodically to pay debts incurred in his open end credit account by permitting the card issuer

> periodically to deduct all or a portion of such debt from the cardholder's deposit account, and
>
> **(2)** such action with respect to any outstanding disputed amount not be taken by the card issuer upon request of the cardholder.

15 U.S.C. § 1666h. This provision on offsets "is presented as an absolute bar preventing a card issuer from taking action to offset credit card debt against funds held on deposit with the card issuer." Martino v. Am. Airlines Fed. Credit Union, 121 F. Supp. 3d 277, 283 (D. Mass. 2015) (citing § 1666h(a)). "The sole exception to the no-offset rule is when a cardholder agrees in writing to periodic deductions[.]" Id. (citing § 1666h(a)(1)).

Chase argues that plaintiff cannot state a claim pursuant to § 1666h because the allegations in her amended complaint do not sufficiently demonstrate that Chase ever properly held funds on deposit for plaintiff or that it misapplied any such funds. (Def.'s Mem. in Support, DE # 15, at 8.) Chase once again bases its argument on its assertion that the credits giving rise to the credit balance on the May 2015 statement were mistakenly issued. As noted above, at this stage of this case it cannot be determined whether or not Chase actually owed plaintiff the credit balance shown on the May 2015 statement. Taking plaintiff's allegation that she was entitled to the credit balance as true, the FCBA permitted Chase to use the credit balance to offset new account charges only in the limited circumstance where plaintiff agreed to the offset. Given plaintiff's allegation that she repeatedly requested a refund of the credit balance, the amended complaint supports an inference that Chase did not have plaintiff's consent to use the credit balance to pay off amounts due on the credit card. Therefore, the court finds that plaintiff has asserted a plausible claim under § 1666h.

B. **Electronic Funds Transfer Act Claim**

Plaintiff also claims that Chase violated various provisions of the EFTA by failing to follow the proper procedure for resolving errors associated with electronic fund transfers. (Am. Compl., DE # 8, ¶¶ 73-77.) Chase argues that this claim should be dismissed because the EFTA excludes credit card transactions from its coverage. (Def.'s Mem. in Support, DE # 15, at 8.)

The EFTA was enacted "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). An "electronic fund transfer" is defined as "any transfer of funds . . . which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." Id. § 1693a(7). The EFTA applies to electronic fund transfers involving a consumer's "account," which in turn is defined as a "demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) of this title). . ." Id. § 1693a(2), (6). "Importantly, because the EFTA deals with electronic funds transferred directly from bank accounts, it applies to debit cards, but not credit cards." Walker v. JPMorgan Chase Bank, N.A., No. 13:2100-JDT-dkv, 2013 WL 2151713, at *5 (W.D. Tenn. May 16, 2013) (citations omitted); see also Sanford v. MemberWorks, Inc., 625 F.3d 550, 560 (9th Cir. 2010) (noting the EFTA does not apply to credit based transactions).

Plaintiff argues that the implementing regulation for the EFTA, Regulation E, 12 C.F.R. § 1005.12, extends the EFTA's coverage to transactions involving both credit and electronic fund transfer aspects. (Pl.'s Resp. in Opp'n, DE # 17, at 5-6.) She insists that the challenged credit card transactions fall within the protection of the EFTA because it appears they were initiated

electronically via PayPal or a similarly modeled transaction.[2]  (Id.)  Plaintiff is correct that Regulation E covers "[t]he addition to an accepted credit card . . . , of the capability to initiate electronic fund transfers[.]"  12 C.F.R. § 1005.12(a)(1)(i).  However, regardless of the capabilities of a credit card, coverage under the EFTA depends on the nature of the challenged transaction.  See id. § 1026.12(g) (stating that Regulation Z, the implementing regulation for the FCBA, "applies to the credit aspects of combined credit/electronic fund transfer transactions").  "If the unauthorized use of a combined access device-credit card solely involves an extension of credit . . . and does not involve an EFT, for example, when the card is used to draw cash advances directly from a credit line, only the error resolution provisions of Regulation Z will apply."  Id. § 1005.6.  Thus, in order for the challenged transactions to fall within the EFTA's coverage, plaintiff must show that the electronic fund transfers involved a credit or debit to a consumer account.  See Walker, 2013 WL 2151713, at *5 ("Electronic fund transfers covered by the Act have three components: 1) a transfer of funds, 2) initiation by electronic means, and 3) a debit or credit to a consumer account.").

      Here, plaintiff alleges that the challenged transactions involved unauthorized charges to her credit card account.  Thus, even assuming the unauthorized charges were initiated via PayPal, the challenged transactions were credit based transactions and did not involve an electronic funds transfer within the meaning of the EFTA.  Accordingly, the court finds that the EFTA is inapplicable to the challenged transactions and plaintiff's EFTA claim must be dismissed.

---

[2] PayPal is an internet payment service provider that allows users to make payments and accept payments electronically.  (Pl.'s Resp. in Opp'n, DE # 17, at 5.)

C.  **UDTPA Claim**

Chase also moves to dismiss plaintiff's claim under the UDTPA.  Plaintiff's allegations supporting this claim are that Chase refused to return multiple messages, failed to investigate and correct the unauthorized charges, and wrongfully used funds credited to her account following its internal investigation into the unauthorized charges.  (Am. Compl., DE # 8, ¶¶ 20-27, 20-42.)  Chase contends that plaintiff's factual allegations constitute, at most, a breach of contract, and that plaintiff has not plausibly alleged substantial aggravating factors that would support an independent UDTPA claim.  (Def.'s Mem. in Support, DE # 15, at 11.)  Plaintiff responds that her UDTPA claim is predicated on Chase's violations of the FCBA and EFTA provisions on unfair credit and billing practices.  (Pl.'s Resp. in Opp'n, DE # 17, at 7.)  She further asserts that she has sufficiently pled that Chase engaged in unfair and deceptive trade practices because violation of either of these statutes constitutes a *per se* violation of the UDTPA, citing In re Fifth Third Bank, N.A., 719 S.E.2d 171, 176 (N.C. Ct. App. 2011).  (Id.)

In North Carolina, "violation of a consumer protection statute may, in some instances, constitute a per se violation of the UDTPA."  Id. at 176; see also Walker v. Fleetwood Homes of N.C., Inc., 653 S.E.2d 393, 398 (N.C. 2007) ("[A] violation of a regulatory statute which governs business activities may also be a violation of N.C. Gen. Stat. 75-1.1.") (internal citation and quotation marks omitted).  Although violation of a regulatory statute can form the basis of a UDTPA claim, such a violation does not constitute a *per se* UDTPA violation unless the regulation "specifically designate[s] that a violation of the [regulation] is also a violation of [the UDTPA]" or "*specifically* defines and proscribes conduct which is unfair or deceptive within the meaning of the UDTPA."  Noble v. Hooters of Greenville (NC), LLC, 681 S.E.2d 448, 452 (N.C. Ct. App. 2009) (emphasis in original).  In this case, neither the FCBA nor the EFTA

designates the regulated conduct as a violation of the UDTPA, nor do they specifically define and proscribe unfair or deceptive conduct within the meaning of the UDTPA. Therefore, in order for this claim to survive, plaintiff must show that Chase's alleged violations of the FCBA and the EFTA independently satisfy the elements of a UDTPA claim. See Noble, 681 S.E.2d at 455 ("[T]he violation of a regulatory scheme may be a violation of the UDTPA where the violation satisfies the three elements of a UDTPA claim.").

To state a claim under the UDTPA, a plaintiff must demonstrate: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused actual injury to plaintiff[]." Walker, 653 S.E.2d at 399; see also N.C. Gen. § 75-1.1. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers," while a "practice is deceptive if it has the capacity or tendency to deceive." Walker, 653 S.E.2d at 399 (citation and quotation marks omitted). Although the North Carolina courts have construed the UDTPA liberally, "only practices that involve '[s]ome type of egregious or aggravating circumstances' are sufficient to violate the [UDTPA]." S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese, 284 F.3d 518, 535 (4th Cir. 2002) (alteration omitted) (quoting Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001)).

Plaintiff first claims that Chase's violations of the error resolution procedures in the FCBA and EFTA constitute UDTPA violations. (Am. Compl., DE # 8, ¶¶ 18, 81.) For the reasons discussed above, the EFTA does not apply to the challenged credit card transactions. Therefore, plaintiff cannot rely on violation of this statute to support a claim for unfair trade practices. As to the part of plaintiff's UDTPA claim that is premised on Chase's failure to follow the billing dispute procedures set forth in the FCBA, plaintiff has not alleged sufficient

12

facts demonstrating that she complied with the notice requirement that would trigger Chase's statutory obligations under the statute. Accordingly, Chase's alleged violation of the FCBA's billing error provisions cannot form the basis of plaintiff's UDTPA claim. Cf. Gilbert v. Residential Funding LLC, 678 F.3d 271, 280 (4th Cir. 2012) (recognizing that where it was held that certain claims of violations of the TILA should go forward and are supported by a sufficient factual basis for these claims, the UDTPA claims should be allowed to proceed as well).

Plaintiff's UDTPA claim is also based on her claim regarding Chase's failure to comply with the FCBA's provisions on refunds and offsets. (Pl.'s Resp. in Opp'n, DE # 17, at 6.) Plaintiff asserts that Chase's "wrongful seizing" of the funds credited to her account was an "inequitable assertion" of power that North Carolina deems to be an unfair trade practice. (Id. at 7-8.) As plaintiff notes in her responsive brief, conduct is considered unfair or deceptive within the meaning of the UDTPA "where a party engages in conduct manifesting an inequitable assertion of power or position[.]" Gray v. North Carolina Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000). Taking plaintiff's allegations as true, Chase violated the FCBA's provisions on refunds and offsets by refusing to follow the results of its investigation and wrongfully withholding funds owed to plaintiff so that it could offset fraudulent charges to plaintiff's account without her authorization. (Id. ¶¶ 40-42.) Such conduct is unfair or deceptive within the meaning of the UDTPA. See Faucette v. 6303 Carmel Rd., 775 S.E.2d 316, 324 (N.C. Ct. App. 2015) (finding that defendant's use of its position of power to wrongfully withhold funds that were legally owed to plaintiff in order to pressure resolution of an ongoing dispute between the parties was unfair and deceptive within the meaning of the UDTPA). Accordingly, the court finds that plaintiff has alleged sufficient facts to support a UDTPA claim predicated on the refund and offset provisions of the FCBA.

D.  **Declaratory Judgment Claim**

Plaintiff also requests declaratory relief under the North Carolina Uniform Declaratory Judgment Act ("Declaratory Judgment Act"), N.C. Gen. Stat. § 1-253 *et seq*. (Am. Compl., DE # 8, ¶ 86.) Specifically, plaintiff requests the court enter an order declaring "the present balance on the credit card maintained by [Chase]." (Id. at 9.) Chase argues that this claim should be dismissed because "[t]he declaratory judgment that White is seeking would serve no purpose because her alleged damages, if any, should be determined under the [p]arties' undisputed contractual agreement and through the [c]ourt's adjudication of the breach of contract claim." (Def.'s Mem. in Support, DE # 15, at 13.)

The Declaratory Judgment Act "permits a litigant to seek a declaration of the rights or obligations of parties to a written contract when there is some dispute among the parties concerning those respective rights or obligations." Perry v. Bank of America, N.A., No. COA16-234, 2017 WL 491220, at *2 (N.C. Ct. App. Feb. 7, 2017). "[I]ts purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations[.]" N.C. Gen. Stat. § 1-264. "'[C]ourts have jurisdiction to render declaratory judgments only when the pleadings and evidence disclose the existence of an actual controversy between parties having adverse interests in the matter in dispute.'" Ocracomax, LLC v. Davis, 788 S.E.2d 664, 668 (N.C. Ct. App. 2016) (quoting Gaston Bd. of Realtors v. Harrison, 316 S.E.2d 59, 61 (N.C. 1984)).

Here, plaintiff alleges that there is an actual controversy between the parties "relating to the appropriate amount of credit card balance which should be shown on the credit card account." (Am. Compl., DE # 8, ¶ 85.) The Declaratory Judgment Act "exists to permit courts to declare rights, status and other legal relations, not to serve as arbiters of routine fact disputes

14

that arise in people's dealings with one another." Perry v. Bank of Am., N.A., No. COA16-234, 2017 WL 491220, at *2 (N.C. Ct. App. Feb. 7, 2017). Consequently, "resolving a dispute over the balance in a bank account, or the amount due on a loan, is not the type of controversy that can be resolved using the Declaratory Judgment Act." Id. Because plaintiff seeks declaration only of the amount she owes to Chase, the court finds that plaintiff's request is not suitable for resolution under the Declaratory Judgment Act. Accordingly, this claim will be dismissed.

### III. CONCLUSION

For the reasons set forth above, Chase's partial motion to dismiss the amended complaint, (DE # 14), is GRANTED IN PART and DENIED IN PART. Plaintiff's claims against Chase for declaratory judgment and for violation of the EFTA are DISMISSED. With respect to plaintiff's claims under the FCBA and UDTPA based on Chase's alleged failure to follow the proper procedure for resolving billing errors, these claims are DISMISSED WITHOUT PREJUDICE. Plaintiff's FCBA and UDTPA claims based on Chase's alleged wrongful seizing of funds credited to plaintiff's account remain.

This 24 March 2017.

                                                                  _____
                                                                     W. Earl Britt
                                                                     Senior U.S. District Judge